❏ Original ❏ D

**CLERK'S OFFICE**
**A TRUE COPY**
Jan 17, 2025
s/ JDH

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.  **25-M-317 (SCD)** |
| Information associated with three GMAIL ACCOUNTS: | ) |
| Melvinorttiizz1@gmail.com, Melvinorttiiz@gmail.com, | ) |
| Melvinorttiiz@gmail.com (The "target accounts"), that is stored at premises | ) |
| owned, maintained, controlled or operated by Google LLC, a company | ) |
| headquartered at 1600 Amphitheatre Parkway, Mountain View, California | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before **January 31, 2025** *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Stephen C. Dries _____ .

*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     1-17-25. 11:35 am _____     *Stephen C. Dries* _____

*Judge's signature*

City and state:     Milwaukee, WI _____     Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**


This warrant applies to information which is associated with email addresses **Melvinorttiz@gmail.com, Melvinorttiiz@gmail.com,** and **Melvinorttiizz1@gmail.com** (**Target Accounts),** which are stored at premises owned, maintained, controlled, or operated by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California.

# ATTACHMENT B
## Particular Things to be Seized

## I. Information to be disclosed by Google LLC (the "Provider"):

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to the provider, the Provider is required to disclose the following information to the government for the account or identifier listed in Attachment A for the time period of June 1, 2021 to present:

**Google Account**
- **SUBSCRIBER AND ACCESS RECORDS:** All business records and subscriber information, in any form kept, pertaining to the account, including: full name; physical address; telephone numbers, including SMS recovery and alternate sign-in numbers; alternative and recovery email addresses, including those provided during registration; usernames, screennames and other identifiers; account status; account creation date; account registration IP address; length of service; records of session times and durations, including log-in IP addresses; methods of connecting; log files; subscriber change history; means and source of payment (including any credit or bank account number); and detailed billing records;

- **DEVICES:** All device information associated with the accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

- **SERVICES:** The types of services utilized, including connected applications and sites, and any dates associated with the commencement or termination of that use;

- **FORWARDING OR FETCHING ACCOUNTS:** All forwarding or fetching accounts relating to the accounts;

- **BROWSING, SEARCH, and APPLICATION USE HISTORY:** All Internet search, browsing history, and application usage history, such as Web & App Activity**,** including: search terms; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; all text typed into the Google Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP addresses clicked on; user settings; and all associated logs and change history;

- **LOCATION HISTORY:** All records indicating the location at which the account was active, such as Location History and Web & App Activity, including: GPS data; cell site/cell tower information; IP addresses; information associated with each location record, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, and inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car); and associated logs and user settings, including Timeline access logs and change history;

## Gmail

- **GMAIL:** The contents of all emails associated with the account, including, but not limited to: stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

- **CONTACTS:** Any records pertaining to the user's contacts, including: address books; contact lists, including autocomplete suggestions; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

- **CALENDAR:** Any records pertaining to the user's calendar, including: Google Calendar entries; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

- **WEB-BASED CHATS:** The contents of all chats associated with the account, including Google Hangouts, Meet, and Chat, in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size and length of each communication; user settings; and all associated logs, including access logs and change history;

## Google Drive

- The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

**Google Photos**

- The contents of all media associated with the account in Google Photos or Picasa, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

**Google Maps and Trips**

- All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

**Google Play Store**

- **MEDIA AND APPLICATIONS:** All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

**Google Voice**

- **GOOGLE VOICE:** All Google Voice records associated with the account, including: associated telephone numbers, including forwarding numbers; connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history;

- **GOOGLE VOICE SUBSCRIBER RECORDS:** All business and subscriber records associated with the account on Google Voice, including: name; user name; physical address; alternate or recovery emails; telephone numbers, including SMS recovery numbers; linked accounts; account status; account creation date; account registration IP address; length of service; associated devices; associated AndroidIDs; means and source of payment (including any credit or bank account number); and all associated logs and change history;

**Messaging Services**

- **MOBILE MESSAGING:** The contents of all messages associated with the account, including Google Duo, Android Messages, and Google Allo, in any format (e.g. SMS,

MMS, or RCS) including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses and telephone numbers; the size and length of each communication; associated telephone numbers, including SMS recovery numbers; usernames and other identifiers; user settings; and all associated logs and change history;

**YouTube**

- **YOUTUBE CONTENTS:** The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

- languages of input and output; and all associated logs, including access logs, IP addresses, timestamps, location data, and change history;

The Provider is hereby ordered to disclose the above information to the Government within 21 days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of Title 18 United States Code Section 922(a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun to Juvenile] and Section 1961(1)b) [Straw Purchasing and Firearms Trafficking] those violations involving Melvin R ALVARADO ORTIZ and occurring after January 1, 2021, including, for each account listed on attachment A [the **Target Accounts**], information pertaining to the following matters:

a) Evidence of the crimes under investigation, including preparatory steps taken in furtherance of such activity, and steps taken after such activity to hinder and prevent apprehension and identification, or evidence that may refute the subscriber's involvement in such activity;

b) Information that constitutes evidence concerning the unlawful dealing in firearms without a federal firearms license or making false statements in the acquisition of firearms from a federally licensed dealer;

c) Evidence indicating how and when the **Target Accounts were** accessed or used, to determine the geographic and chronological context of the **Target Accounts** access, use, and events relating to the crime under investigation and to the email account owner;

d) Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

e) Evidence indicating the **Target Accounts** owner's state of mind as it relates to the crime under investigation;

f) Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts;

g) The identity of the person who created or used the **Target Accounts**, including records that help reveal the whereabouts of such person; and

h) The identity of the person(s) who communicated with the **Target Accounts** about matters relating to the dealing in firearms without a federal firearms license or making false statements in the acquisition of firearms from a federally licensed dealer, including reports that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO

## FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the

United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this

certification is true and correct. I am employed by Google, LLC ("Google"), and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state that

the records attached hereto are true duplicates of the original records in the custody of Google. The

attached records consist of _____ (pages/CDs/megabytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the
    matter set forth by, or from information transmitted by, a person with knowledge of those
    matters, they were kept in the ordinary course of the regularly conducted business activity of
    Google, and they were made by Google as a regular practice; and

b.  such records were generated by Google's electronic process or system that produces an
    accurate result, to wit:

    1.  the records were copied from electronic device(s), storage medium(s), or file(s) in the
        custody of Google in a manner to ensure that they are true duplicates of the original records;
        and

    2.  the process or system is regularly verified by Google, and at all times pertinent to the
        records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the

Federal Rules of Evidence.

_____    _____

Date                                        Signature

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Jan 17, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched* | ) | Case No. **25-M-317 (SCD)** |
| *or identify the person by name and address)* | ) | |
| Information associated with three GMAIL ACCOUNTS: Melvinorttiizz1@gmail.com, Melvinorttiiz@gmail.com, Melvinorttiz@gmail.com (The "target accounts"), that is stored at premises owned, maintained, controlled or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A,

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(a)(1) | Dealing in Firearms without a license |
| 18 U.S.C. Section 922(d)(3) | Selling/Giving Firearms to an Unlawful Drug User |
| 18 U.S.C. Section 1961(1)(b) | Straw Purchasing and Firearms Trafficking |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Digitally signed by Alexis Krusic
DN: cn=Alexis Krusic, o=Bureau of ATF, ou=Milwaukee Field Office,
email=Alexis.Krusic@atf.gov, c=US
Date: 2025.01.16 15:48:46 -06'00'

Alexis Krusic, ATF Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone *(specify reliable electronic means)*.

Date: 1-17-25

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
## MATTER NUMBER

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google LLC (hereafter "Google") to disclose to the government records and other information, including the contents of communications, associated with the Google Accounts **Melvinorttiz@gmail.com, Melvinorttiiz@gmail.com,** and **Melvinorttiizz1@gmail.com,** hereafter referenced as "**Target Accounts**," that are stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be disclosed by Google and searched by the government is described in the following paragraphs and in Attachments A and B.

2.      I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee IV Field Office.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and an ATF TFO since March of 2020.  My duties as a TFO with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

4.      I have completed approximately 920 hours (6 months) of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau.  That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information on social media platforms to convey a message to groups of people and use their cellphones to communicate with individuals about the crime(s) they have committed to include before, during and after the incident.

5.      I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, 5-week certification program, to become a certified bomb technician.

6.      I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

7.      I have participated in firearm and drug trafficking investigations that involved the search of social media and electronic communication, and the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these accounts or computers, cellular phones, cameras, and other digital storage devices, on many occasions, has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

8.      Based on my training and experience, I know that persons who purchase and sell firearms commonly maintain photographs, documents, communication and other electronic

records regarding the purchase and/or sale of those firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons, as well as records or receipts pertaining to firearms and ammunition on remotely stored accounts such as Google, including within email accounts like Google "Gmail."

9.     The information below is based on my personal knowledge, training, and experience, and through information provided to me by other law enforcement officers during their official duties and whom I consider to be truthful and reliable.

10.    I also know from training and experience that it is common for drug users, drug dealers, firearm traffickers, firearm possessors, and firearm straw purchasers to communicate by cellular phone through a variety of electronic media. The participants in these criminal organizations can use text (SMS) messaging, iMessage, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook, Snapchat and Twitter to communicate about and organize criminal activity.   Furthermore, based on my training and experience, I know that people who are prohibited from purchasing firearms (e.g., felons) will communicate with people who are authorized to purchase firearms by means of cellular telephone to coordinate the purchase of firearms.  Lastly, I know that it is common for straw purchasers to conduct research or purchase firearms by visiting gun sales websites, including via their phones and receive email confirmations of firearm purchases, to include tracking information and estimated delivery dates.

11.    Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only facts that I believe are sufficient to establish probable cause to believe that the electronic devices described herein contain evidence relating to violations of Title 18, United

States Code, Section 922 (a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False Statements in FFL Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking] that have been committed by MELVIN R ALVARADO ORTIZ (M/H, 10/29/99) and other known and unknown subjects and that evidence of those violations is contained in the following email accounts:

     A.   Melvinorttiizz1@gmail.com

     B.   Melvinorttiiz@gmail.com

     C.   Melvinorttiz@gmail.com

which are linked to the owner, Melvin R ALVARADO ORTIZ. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

12.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 United States Code Section 2711. Title 18 United States Code Sections 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." Title 18 United States Code Section 2711(3)(A)(i).

## PROBABLE CAUSE

13.     It is unlawful for anyone who is not a federal firearm licensee ("FFL") to engage in the business of dealing in firearms, or to ship, transport, or receive a firearm in interstate or foreign commerce. See Title 18 United States Code Section 921 et seq. In the Eastern District of

Wisconsin, FFLs include commonly known retailers like Cabela's and Fleet Farm, and—of relevance here—Dunham's locations throughout Wisconsin.

14. An FFL cannot lawfully transfer firearms to a non-FFL transferee/buyer (hereinafter "buyer") without requiring the buyer to complete ATF Form 4473, which must be kept in the FFL's records. See Title 18 United States Code Section 921 et seq. In addition, FFLs must contact the National Instant Criminal Background Check System ("NICS") to determine if a transfer can lawfully proceed. NICS background checks are conducted by a designated state or federal law enforcement agency, and query databases for arrests, convictions, and other disqualifying conditions as described below and in Title 18 United States Code Section 921 et seq. Of primary interest here, when a buyer wants to purchase a handgun from an FFL in Wisconsin, the FFL must initiate the NICS background check by contacting the Wisconsin Department of Justice's Handgun Hotline.

15. To conduct a lawful NICS background check and firearm transfer from an FFL, the buyer must complete ATF Form 4473. Form 4473 requires the buyer to provide truthful, accurate, and material information regarding (but not limited to): (i) the buyer's name, residence, citizenship, and birthdate; (ii) whether the buyer is the actual buyer, rather than unlawfully acquiring the firearm for another person, commonly called "straw purchasing"; and (iii) whether the buyer is statutorily prohibited from possessing firearms because they are or have been a fugitive, under indictment, a convicted felon, a convicted domestic-violence misdemeanant, an illegal alien, dishonorably discharged from the military, subject to a court order prohibiting firearm possession, adjudicated as mentally defective, committed to a mental institution, and/or an unlawful user of or addicted to any controlled substance.

16. Form 4473 provides definitions and examples to distinguish between an actual

buyer versus unlawfully acquiring a firearm for someone else/straw purchasing. Unlawfully acquiring for others includes doing so for money or value, rather than as a bona fide gift. The tactic of straw purchasing is used not only when the buyer is prohibited by law from possessing firearms (and therefore cannot pass a background check), but also by non-prohibited buyers who want to avoid detection and suspicion because they intend to engage in unlawful activity with a firearm, like dealing firearms without a license, using firearms to commit crimes, or trading firearms for drugs.

17.     Each time a buyer completes Form 4473 in a firearm transaction with an FFL, the form expressly notifies the buyer that their signature means: they are certifying that all information they provided is true and correct; that they understand all questions, notices, instructions, and definitions on the form; that they know any false answer can be prosecuted under federal and state law; and that they are providing all information under penalty of perjury.

18.     Some gun buyers and sellers use on-line platforms like "Armslist, LLC ("Armslist")" and "GunBroker, LLC ("GunBroker")" which serve as virtual marketplaces to arrange firearms transactions. However, the shipment and transfer of the firearm must be conducted in person through an FFL—like Guardian Guns in South Milwaukee, Wisconsin and Dunham's in Wisconsin [Franklin, West Allis, Delavan, New Berlin, Racine, and Brookfield]— in compliance with all laws in the buyer's state of residence.

19.     I am aware of an investigation into Melvin R ALVARADO ORTIZ (M/H, XX/XX/1996) that had purchased a large quantity of firearms that had multiple recoveries associated.

20.     ALVARADO ORTIZ had purchased 42 firearms between 06/20/2021 and 3/15/2024. As of January 2, 2025, sixteen (16) of ALVARADO ORTIZ's purchases between

August 19, 2021, and March 15, 2024, have been recovered on different subjects in Wisconsin, Puerto Rico, New York and Illinois.

21.     In the course of investigating ALVARADO ORTIZ for these purchases, a variety of financial institutions have been served with subpoenas. These subpoena returns have included three GMAIL addresses on file for ALVARADO ORTIZ at the institutions: Melvinorttiizz1@gmail.com, Melvinorttiiz@gmail.com, Melvinorttiz@gmail.com. These emails are now the target of this warrant.

22.     The majority of firearm purchases by ALVARADO ORTIZ were paid for entirely in US currency from multiple FFL locations within Wisconsin. ALVARADO ORTIZ provided the following telephone numbers: (414)491-0030 from June 20, 2021, to August 4, 2023; (414)530-2768 from March 1, 2023, to July 7, 2023; (414)309-3225 on September 26, 2023; and (414)309-3229 on March 15, 2024, to acquire firearms.

23.     As the investigation continued, by May 24, 2024, case agents discovered that ALVARADO ORTIZ had purchased a total of 42 firearms with 16 recoveries at crime scenes or during law enforcement investigations.

24.     Case agents located nine FFL's that ALVARADO ORTIZ used to transfer/purchase the 42 firearms. The FFL's include EGun Direct (one firearm) in Butler, Wisconsin, Shorty's Shooting Supply in West Allis, Wisconsin (two firearms); Guardian Guns (three firearms) in South Milwaukee, Wisconsin; the following Dunham's locations: Franklin, Wisconsin (10 firearms); West Allis, Wisconsin (11 firearms); Delavan, Wisconsin (one firearm); New Berlin, Wisconsin (six firearms); Racine, Wisconsin (two firearms); Brookfield, Wisconsin (five firearms); and one unknown FFL due to an offline NCIC search, showing that a firearm was purchased on a certain date, but not able to obtain the FFL.

25. Eleven of the 42 firearms purchased by ALVARADO ORTIZ were recovered within a year of the purchase date in crime incidents. The remaining recoveries spanned from 386 days to 809 days. Based on my training and experience, this type of activity is consistent with ALVARADO ORTIZ purchasing the firearms and engaging in the illegal reselling of the firearms.

26. Affiant is aware that an ATF E-Trace form is completed to trace recovered firearms in crimes and records the purchaser of the firearm.

27. On August 19, 2021, ALVARADO ORTIZ purchased a Glock 19X with SN BSYC946 according to ATF E-Trace form T20220506552. On September 29, 2022, 406 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. The incident involved a subject that actively resisted/obstructed officers and was charged with endanger safety by use of a dangerous weapon (refer to NIBIN section).

28. On October 3, 2021, ALVARADO ORTIZ purchased a Glock 19 with SN BUAS727 according to ATF E-Trace form T20220598958. On November 17, 2022, 410 days from the date of purchase, the Glock was recovered in an incident in Puerto Rico. The incident involved ATF-Puerto Rico where information was received that a particular housing complex was the source of the area's narcotics and the subject involved in this recovery was an active subject within this business.

29. On December 3, 2021, ALVARADO ORTIZ purchased a Glock 19 with SN BUPK716 according to ATF E-Trace form T20240104151. On February 24, 2024, 813 days from the date of purchase, the Glock was recovered in an incident in Buffalo, New York. The incident involved a subject (male born in 2004). Police responded to a large number of subjects fighting at a party and officers observed the subject holding a firearm, refused officer commands and ran into the residence, returning outside without the firearm. A witness at the party showed officers a video

of the subject firing the fully automatic Glock 19 and threatening underage subjects within the residence with the firearm.

30.    On January 21, 2022, ALVARADO ORTIZ purchased a Glock 27 with SN BVLH956 according to ATF E-Trace form T20220549628. On October 15, 2022, 267 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. A dark blue BMW sedan was located by undercover officers that was wanted for a shooting incident on October 7, 2022. Gonzalez was the front driver and the front passenger was Suarez-Rodriguez. Officers observed narcotics inside of the vehicle. Officers obtained a residential search warrant and recovered large amounts of narcotics, firearms, drug packaging, a ski mask, and the Glock that fired fully automatic. The subject's cell phone had videos of 'cartel' activity per his messages. This firearm had 10 NIBIN incidents linked (refer to NIBIN section).

31.    On January 27, 2022, ALVARADO ORTIZ purchased a Glock 19 with SN BVHC623 according to ATF E-Trace form T20220387553. On August 5, 2022, 190 days from the date of purchase, the Glock was recovered in an incident in Puerto Rico via ATF.  In the incident, drug packaging materials, and drug paraphrenia were found. Pursuant to a state residential search warrant, the subject was on supervision for shooting at undercover officers who arrived on his drug point where he was selling marijuana and heroin. The subject told officers that he purchased the firearm two months prior for $1,000.00 for his protection and knew the firearm was illegal.

32.    On February 10, 2022, ALVARADO ORTIZ purchased a Glock 19X with SN AGBY835 according to ATF E-Trace form T20220199142. On April 6, 2022, 55 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. The incident involved maintaining a drug trafficking place and mobile drug dealing, and the investigation ended

with the recovery of a large amount of narcotics (heroin, cocaine, fentanyl).

33.     On February 24, 2022, ALVARADO ORTIZ purchased a Glock 17 with SN BVBK769 according to ATF E-Trace form T20230274010. On March 17, 2022, 21 days from the date of purchase, the Glock was recovered in an incident in Chicago, Illinois.  The incident involved a subject operating a vehicle that had the firearm inside. A small amount of narcotics was located.

34.     Also on February 24, 2022, ALVARADO ORTIZ purchased a Glock 19 with SN BVHM492 according to ATF E-Trace form T20240110973. On August 30, 2023, 552 days from the date of purchase, the Glock was recovered in an incident in Chicago, Illinois.  The incident involved an armed robbery, unlawful possession of a firearm by a felon and manufacture, and delivery of crack.

35.     On September 10, 2022, ALVARADO ORTIZ purchased a Glock 17 with SN BWFF781 according to ATF E-Trace form T20230028022. On November 28,2022, 79 days from the date of purchase, the Glock was recovered in an incident in Chicago, Illinois.  In this incident, narcotics were located during a traffic stop. The subject was removed from the vehicle and when officers conducted a pat down, he fled on foot and was later apprehended with the Glock.

36.     On March 1, 2023, ALVARADO ORTIZ purchased a Glock 19 with SN BZBU956 according to ATF E-Trace form T20230215589. On April 27, 2023, 57 days from the date of purchase, the Glock was recovered in an incident in Franklin Park, Illinois along with narcotics during the search of a vehicle.

37.     On March 25, 2023, ALVARADO ORTIZ purchased a Glock 19Gen5 with SN BZSW916 according to ATF E-Trace form T20230489419. On August 17, 2023, 145 days from the date of purchase, the Glock was recovered in a homicide in Chicago, Illinois.  The incident

involved a subject that was shot in a drive by shooting and died on the scene. The passenger in the parked vehicle with the subject was also shot in the head but survived. The firearm on the passenger had an E-Trace gang affiliation to the Latin Kings.

38.     Also on March 25, 2023, ALVARADO ORTIZ purchased a Glock 17 with SN BWFN745 according to ATF E-Trace form T20230272459. On May 29, 2023, 65 days from the date of purchase, the Glock was recovered in a homicide in Bellwood, Illinois.  The incident involved a subject that was shot and died on the scene.

39.     On May 22, 2023, ALVARADO ORTIZ purchased a Glock 19 with SN BZMX439 according to ATF E-Trace form T20240210601. On April 22, 2024, 386 days from the date of purchase, the Glock was recovered in an incident in Kenosha, Wisconsin. In the incident, the subject was arrested for possession of a machine gun, felon in possession of a firearm PTAC, obstructing an officer, and possession of THC (2nd + offense). The Glock fired fully automatic. This firearm had NIBIN incidents (refer to NIBIN section).

40.     On June 14, 2023, ALVARADO ORTIZ purchased a Glock 19X with SN BZCL660 according to ATF E-Trace form T20230487692. On August 8, 2023, 55 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin.  In the incident, a vehicle fled from police, and then the subjects fled on foot and were apprehended. Narcotics were located and the subject arrested for resisting/obstructing, possession of THC, possession of a firearm by an adjudicated delinquent, possession with intent-cocaine and possession with intent-fentanyl. This firearm had NIBIN incidents linked with one of those being a homicide (refer to NIBIN section).

41.     On August 4, 2023, ALVARADO ORTIZ purchased a Glock 19 with SN CAAB727 according to ATF E-Trace form T20230522976. On September 11, 2023, 38 days from

the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin.  In this incident, the subject was arrested for operate/go armed with firearm while intoxicated, discharge firearm within 100 yards of a building, endanger safety by use of a dangerous weapon, and carry concealed weapon. Officers responded to this incident due to hearing shots fired in the area. The Glock had been modified to fire fully automatic. This firearm had NIBIN incidents linked (refer to NIBIN section).

42.     On March 15, 2024, ALVARADO ORTIZ purchased a Romarm/Cugir Mini Draco with SN 23PH-2414 according to ATF E-Trace form T20240225571. On April 22, 2024, 38 days from the date of purchase, the Mini Draco was recovered in an incident in Milwaukee, Wisconsin. The subject in this incident was arrested for possession of a machine gun, recklessly endangering safety x2, bail jumping, flee/elude officer, and carry concealed weapon.

43.     As mentioned in passing above, many of the firearms purchased by Ortiz and then recovered at crime scenes were then matched to additional crimes via NIBIN.  The National Integrated Ballistics Information Network, (hereinafter: NIBIN) is a law enforcement database where recovered firearms are test-fired and the unique markings they make onto casings are noted. This allows law enforcement to match recovered firearms to other crimes.

44.     In this case, six of the firearms purchased by Ortiz and recovered by law enforcement were NIBIN linked to approximately 17 additional shootings.  The NIBIN Incidents are as follows:

<u>Glock 27 .40 Caliber SN BVLH956</u>

a.      February 4, 2022, 00:00- Gunshot detection at 2601 W Becher Street, Milwaukee, WI. [13] .40 caliber casings recovered.

b.      March 12, 2022, 00:00- Shots fired at 1519 S 20th Street, Milwaukee, WI. [13] .40

caliber casings recovered. Shots were fired into the occupied residence of a victim.

c.      June 25, 2022, 00:00- Shooting at occupied building/vehicle at 1222 S 17th Street, Milwaukee, WI.

d.      September 17, 2022, 00:00- Gunshot detection at 1938 S Congo Avenue, Milwaukee, WI. [10] .40 caliber casings recovered.

e.      September 17, 2022, 00:00- Gunshot detection at 1958 S 5th Place, Milwaukee, WI. [14] .40 caliber casings and [13] 9mm casings recovered.

f.      October 7, 2022, 00:00- Shots fired at 2068 S 15th Place, Milwaukee, WI. [15] .40 caliber casings fired at a subject in his occupied vehicle.

g.      October 8, 2022, 00:00- Gunshot Detection at 1120 N 35th Street, Milwaukee, WI. [9] .40 caliber casings recovered.

h.      October 8, 2022, 00:00- Gunshot detection at 1657 S 17th Street, Milwaukee, WI. [4] .40 caliber casings recovered from two different firearms.

i.      October 15, 2022, 00:00- Weapons Violation at 1938 S Congo Avenue, Milwaukee, WI. Located vehicle involved in a shooting. The firearm had an auto-sear on it. Also located in the vehicle was crack cocaine, cocaine powder, and fentanyl.

## Glock 19X 9mm SN BZCL660

a.   July 28, 2023, 00:00- Shots fired at 2222 S 12th Street, Milwaukee, WI. [53] 9mm casings recovered.

b.   July 28, 2023, 00:00- Gunshot detection at 1982 S 11th Street, Milwaukee, WI. [32] 9mm casings from 3 firearms recovered.

c.   August 5, 2023, 00:00-Homicide/Murder at 1518 S 15th Place, Milwaukee, WI. Double homicide scene. Unknown actor(s) discharged a firearm multiple times at both victims,

where both victims suffered multiple gunshot wounds, causing their deaths. Nobody was taken into custody on this date for this incident.

d. August 8, 2023, 00:00- Felon in Possession at 1000 W Greenfield Avenue, Milwaukee, WI. Officers conducted a stop on a homicide vehicle when it fled from officers (the vehicle wanted in the August 5, 2023, double homicide above). The vehicle came to a stop and the two subjects then fled on foot and were apprehended. Inside of the vehicle, officers located the Glock 19X and a black Glock 27 P80 .40 caliber from the vehicle with a large amount of narcotics.

## Glock 19 9mm SN CAAB727

a. September 10, 2023, 00:00- Gunshot detection at 2400 W Burnham Street, Milwaukee, WI. [6] 9mm casings recovered.

b. September 10, 2023, 00:00- Gunshot detection at 1538 S Union Street, Milwaukee, WI. Officers heard shots being fired and stopped the vehicle they believed fired the shots. Officers located the black Glock with an auto-sear. Officers recovered [11] 9mm casings in front of 2331 W Rogers Street, Milwaukee, WI.

## Glock 19X 9mm SN BSYC946

a. August 29, 2021-Shots Fired at 2257 S 29th Street, Milwaukee, WI.

b. September 29, 2022-Gunshot Detection at 1946 S Congo Avenue, Milwaukee, WI. Arrest made of subjects who shot into the air, [6] 9mm casings recovered from the street and [1] 9mm casing recovered from subject's pocket.

## Glock 19 9mm SN BZMX439

a. August 23, 2023-Endanger Safety by use of a Dangerous Weapon at 2962 N 12th Street, Milwaukee, WI. Unknown subject discharged a firearm striking one residence

and two vehicles.

b. October 1, 2023-Shots Fired at 8125 W Hampton Avenue in Milwaukee, WI. Unknown subject discharged a firearm striking the victim multiple times.

c. October 12, 2023-Shots Fired at 4578 N 29th Street, Milwaukee, WI. Officers responded to a shotspotter alert and recovered [3] 9mm casings.

d. October 18, 2023-Recklessly Endangering Safety at 1250 W Finn Place, Milwaukee, WI. Unknown subject discharged a firearm into an occupied vehicle. Victim was shot in their leg and rushed into surgery.

e. April 24, 2024-illegal possession, firearm recovered on subject after traffic stop turned into a fleeing vehicle. Two firearms recovered near two subjects after a foot pursuit.

45.    During the investigation into ALVARADO ORTIZ, case agents were able to obtain receipts from Dunham's, pursuant to a subpoena. The other FFLs did not have copies of the receipts or the FFL is still unknown at this time.

46.    ALVARADO ORTIZ's firearm purchases totaled $20,720.01.

47.    Nineteen purchases were paid for in cash.

48.    Case agents observed that of the identified FFL firearm purchases by ALVARADO ORTIZ, the following are repetitive purchases of the same model and caliber pistols, namely: Glock 19 (13 purchased); Glock 19X (five purchased); Glock 17 (seven purchased); Glock 17Gen5 (two purchased); Glock 19Gen5 (four purchased); Glock 43 (three purchased); and Glock 23 (two purchased).

49.    Based on my training an experience, when someone—as ALVARADO ORTIZ did—acquires more than one firearm of same make, model, and caliber, and engages in numerous, frequent, and rapid buying and selling of these types of firearms, such activity is indicative of

dealing firearms.

50.     Also, ALVARADO ORTIZ's activity is not consistent with occasional sales to enhance a private collection or as a hobby; the firearms at issue are not rare or unique; rather, they are commonplace and have characteristics allowing them to be sold at a profit to prohibited persons and/or those engaged in illicit activity.

51.     Case agents reviewed records from Wisconsin Department of Workforce Development for ALVARADO ORTIZ.

   a.   In 2021, ALVARADO ORTIZ's [14] known purchases totaled $8,759.65 (transactions with receipts)

   b.   In 2022, ALVARADO ORTIZ's [10] known purchases totaled $5,562.37 (transactions with receipts)

   c.   In 2023, ALVARADO ORTIZ's [10] known purchases totaled $5,963.78 (transactions with receipts)

   d.   In 2024, ALVARADO ORTIZ's [1] known purchase totaled $ 614.21 (transaction with receipt)

52.     ALVARADO ORTIZ had the following reported income:

   a.   In 2020: $9,041.25

   b.   In 2021: $3,120.00

   c.   In 2022: $1,661.00

   d.   In 2023: No Earnings

53.     Case agents reviewed records from Cashapp via Block Inc. for ALVARADO ORTIZ, pursuant to a subpoena.

54.     Case agents learned that ALVARADO ORTIZ had two accounts:

a. $MelvinOrttiiz with an email of melvinorttiz@gmail.com and phone numbers of 414-530-2768 and 414-309-3225

    I. Within this account, ALVARADO ORTIZ had transferred a total of $6,180.80 to three other financial accounts under his control.

b. $Melvinorttiz with a phone number of (414)491-0030

    I. Within this account, ALVARADO ORTIZ had transferred a total of $11,911.16 to three financial accounts under his control.

55.     Case agents reviewed financial records from Transunion for ALVARADO ORTIZ pursuant to a subpoena.

56.     Case agents learned that ALVARADO ORTIZ had six financial accounts that were in collection status out of a total of nine accounts.

57.     Case agents learned that ALVARADO ORTIZ's BMO bank accounts had the following:

a. Account 1093 from 2022 to 2024 had $60,482.38 deposits and $58,943.72 payments.

b. Account 4992 from 2020 to 2022 had $117,159.26 deposits and $117,654.33 payments.

58.     Affiant reviewed multiple sets of data acquired by both subpoena and search warrant and used that data to create a timeline of events to include iCloud data-messages and photos, phone tolls, social media, firearm transactions, and financial documents/transactions. Upon reviewing this data, affiant located conversations with ALVARADO ORTIZ and firearm customers, where a firearm would be requested by the customer and ALVARADO ORTIZ would not only tell certain subjects that he would go out [in person] to look for them but would also tell some that he would 'order' them. ALVARADO ORTIZ would also tell customers estimated delivery dates [of the firearm being shipped from the online retailer to the FFL], offer to send the

customer tracking information, and would send links and photos to the customers of firearms from online retailers verifying/asking if it was the firearm they were looking for. In multiple instances, ALVARADO ORTIZ told the customer when they asked for an update on their order, that he would have to check his email, even stating his 'Gmail'. In at least one instance, affiant located a conversation in ALVARADO ORTIZ's Facebook account-'Melvin LMR' that had messages where a customer had asked ALVARADO ORTIZ about the timing of their order from him and he responded (via translation), "Go ahead right now I'll send you the info bro" and followed that message with a screenshot of an 'order summary' from guns.com, that listed 'Melvinorttiz@gmail.com' as ALVARADO ORTIZ's email used to place the order with that website.

59.     Based upon this, your affiant believes ALVARADO ORTIZ used his email and specifically the three GMAIL accounts mentioned in paragraph 21 to facilitate many of his firearm purchases.

60.     Obtaining Gmail data for ALVARADO ORTIZ would allow this additional information to be overlaid on and compared with his communications with subjects/customers, taking their order, ordering the firearm online, showing the confirmation email he received from these online retailers, and then having them shipped to an FFL for the transfer to him. The FFL's records (4473's) only show investigators when a firearm was transferred to ALVARDAO ORTIZ in person, in store, not showing when they were purchased online or shipped to their store.

61.     ALVARADO ORTIZ had a tremendous amount of firearm conversations offering to buy, acquire, and look for certain firearms for different subjects, and it doesn't appear those customers or ALVARADO ORTIZ always followed through based on the number of requests and actual firearm purchases by ALVARADO ORTIZ. It should be noted that via social media and

phone messages, that ALVARADO ORTIZ would also purchase firearms from individuals, not via FFL. Subjects would also offer ALVARADO ORTIZ firearms, with one instance where the price the subject wanted for it was too high, ALVARADO ORTIZ responded that he only bought 'G's [Glocks] and that the $900 that the subject wanted was a resale price so he wouldn't make a profit on it.

62. ALVARADO ORTIZ also told multiple customers that he had to fill out the 'paperwork' [4473] for the sale.

63. With the Gmail account data, affiant would be able to overlay customer purchase requests made to ALVARADO ORTIZ via messages and ALVARADO ORTIZ's online firearm purchase with email confirmation of those online purchases. FFL records are unable to provide investigators with data other than when the firearm was transferred in store to the subject. Affiant would be able to acquire the online retailer and purchase date via the email confirmation for online firearm sales made by ALVARADO ORTIZ.

64. Additionally, your affiant knows that the financial data reviewed to date is not a complete record of ORTIZ's sales to illicit purchasers, because of reviewed messages where ALVARADO ORTIZ told a firearm customer that he preferred to be paid in cash so there would be no evidence and no name of the person he sold the firearm too.

65. When certain customers would ask for payment options, ALVARADO ORTIZ would also mention he would take payment via Cashapp and Zelle.

66. In sum, your affiant concludes that ALVARDO ORTIZ is fraudulently buying and then reselling firearms and that his target accounts are likely to contain evidence of that activity.

**BACKGROUND CONCERNING GOOGLE**

67. Google is an American multinational technology company that offers to the public,

through its Google Accounts, like the **Target Accounts,** a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome and a free search engine called Google Search.

68.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device.

69.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the login username for access to the Google Account. Enterprises may also establish Google Accounts which can be accessed using an email address at the enterprise's domain (e.g. employee[@]company.com).

70.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

71.     **GMAIL:** Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the

Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

72. **CONTACTS**: Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their mobile phone or device address book so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them.

73. **CALENDAR:** Google provides an appointment book for Google Accounts through Google Calendar. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device address book so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them.

74. **GOOGLE TASKS and GOOGLE KEEP:** Google also provides online to-do lists and notepads for Google Accounts. Google Tasks allows users to assign themselves tasks to be completed at scheduled times and marked complete when done. Google Keep allows users to create notes or lists. These notes can be shared with other users to edit. Users can set notifications at particular dates and times for both tasks and notes. Google preserves tasks and notes indefinitely,

unless the user deletes them.

75.     **WEB-BASED CHATS and MOBILE MESSAGING:** Google provides a number of direct messaging services accessible through a browser or mobile application, including Duo, Messages, Hangouts (Chat and Meet), and the now-retired Allo and Chat. These services enable real-time communications. Users can send and receive text messages, videos, photos, locations, links, and contacts from their Google Account using these services. Chat and Hangouts require or required the other user to also have a Google Account. Duo, Messages, and Allo do or did not. Google preserves messages sent through these services indefinitely, unless the user turns off the setting to save conversation history or deletes the message.

76.     **GOOGLE DRIVE:** Google Drive is a cloud storage service automatically created for each Google Account. Users can store documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can also set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

77.     **GOOGLE PHOTOS:** Google offers a cloud-based photo and video storage

service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

78.     **GOOGLE MAPS and GOOGLE TRIPS:** Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

79.     **GOOGLE PLAY:** Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

80.     **GOOGLE VOICE:** Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

81. **GOOGLE CHROME:** Google offers a free web browser service called Google Chrome, which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account.

82. **YOUTUBE:** Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, watch history, likes, comments, and change history to posted videos.

83. **INTEGRATION OF GOOGLE SERVICES:** Google integrates these various services to make it easier for Google Accounts to access the full Google suite of services. Users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

84.     **SUBSCRIBER RECORDS:** When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

85.     **ACCESS RECORDS:** Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

86.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

87.     **BROWSING, SEARCH, and APPLICATION USE HISTORY:** Google collects and retains data about searches that users conduct within their own Google Account or using the Google Search service, including voice queries made to Google Assistant. Google also has the capacity to track the websites visited using its Google Chrome web browser service,

applications used by Android users, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google also collects and retains data about the voice queries made to its artificial intelligence-powered virtual assistant, Google Assistant, on Android devices and associated it with the registered Google Account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely, unless the user deletes them.

88.     **LOCATION HISTORY:** Google collects and retains data about the location at which Google Account services are accessed from any mobile device regardless of service usage. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Google maintains these records indefinitely, unless the user deletes them.

89.     Google also maintains records of the device characteristics of iPhones used to access Google services, including the make and model of the device. Depending on user settings, those records may be associated with the Google Account logged into the service in use on the

device. Google maintains these records indefinitely, unless the user deletes them.

90.     In my training and experience, evidence of who was using a Google Account, and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. I also know, from my training and experience, that individuals who activate a Google Account for the purposes of only using a particular Google service (commonly email) will frequently generate records related to other services available with a Google Account, even inadvertently.  This evidence may establish the "who, what, where, when, why, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. This can be true even if subscribers insert false information to conceal their identity; this information often nevertheless provides clues to their identity, location or illicit activities.

91.     For example, the stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

92.     In addition, the user's account activity, logs, stored electronic communications, location history, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the

account was accessed or used. For example, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). This sort of location data— in addition to the Location History information described above—is especially pertinent where, as here, there has been criminal activity at a specific location, and law enforcement must work to confirm the identity of individuals at that specific location.

93. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the Google Account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement). In my training and experience, I know that drug traffickers typically use a wide variety of electronic media, including emails, to communicate with customers, associates, and sources-of-supply, and review of such communications can yield valuable evidence of this sort.

94. Other information connected to a Google Account may lead to the discovery of additional evidence. For example, the identification of apps downloaded from the Google Play Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity,

documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

95.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning ALVARDO ORTIZ and his use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation, including information that can be used to identify the account's user or users, their location(s) and activities at certain times relevant to the offenses at issue, the identities of their accomplices and co-conspirators, communications with those accomplices and co-conspirators, and actions taken and research performed relating to the criminal offenses at issue. The evidence therein would accordingly be extremely useful to the investigation.  In my training and experience, evidence of who was using the email and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

96.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

97.     There is probable cause to believe that in the Google GMAIL accounts for Melvin R ALVARADO ORITZ listed as **Melvinorttiz@gmail.com, Melvinorttiiz@gmail.com,** and **Melvinorttiizz1@gmail.com,** as listed in the aforementioned paragraphs there is evidence of violations of Title 18, United States Code, Section 922 (a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False Statements in FFL Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking].

98.     That based upon Affiant's training and experience, Affiant knows that the execution of a search warrant related to remotely stored accounts such as Google and within email accounts maintained by Google usually results in items of personal documents such as bills, bank statements, photographs, videos, and other items or documents which establish the identities of persons in control of the media.

99.     That based upon Affiant's training and experience, Affiant knows that individuals purchasing and selling firearms routinely keep emails, regarding the purchases and/or sales.

100.     That Affiant knows that it is common for firearms purchasers and possessors to maintain electronic records relating the ordering and purchase of firearms and that such records are typically kept where the purchaser would have ready access to them including Google email accounts.

101.     Based on the forgoing, I request that the Court issue the proposed search warrant.

102.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by

serving the warrant on Google. Because the warrant will be served on Google, LLC who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

103.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

**ATTACHMENT A**
**Property to Be Searched**


This warrant applies to information which is associated with email addresses **Melvinorttiz@gmail.com, Melvinorttiiz@gmail.com,** and **Melvinorttiizz1@gmail.com** (**Target Accounts),** which are stored at premises owned, maintained, controlled, or operated by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B
## Particular Things to be Seized

**I.      Information to be disclosed by Google LLC (the "Provider"):**

        To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to the provider, the Provider is required to disclose the following information to the government for the account or identifier listed in Attachment A for the time period of June 1, 2021 to present:

**Google Account**

- **SUBSCRIBER AND ACCESS RECORDS:** All business records and subscriber information, in any form kept, pertaining to the account, including: full name; physical address; telephone numbers, including SMS recovery and alternate sign-in numbers; alternative and recovery email addresses, including those provided during registration; usernames, screennames and other identifiers; account status; account creation date; account registration IP address; length of service; records of session times and durations, including log-in IP addresses; methods of connecting; log files; subscriber change history; means and source of payment (including any credit or bank account number); and detailed billing records;

- **DEVICES:** All device information associated with the accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

- **SERVICES:** The types of services utilized, including connected applications and sites, and any dates associated with the commencement or termination of that use;

- **FORWARDING OR FETCHING ACCOUNTS:** All forwarding or fetching accounts relating to the accounts;

- **BROWSING, SEARCH, and APPLICATION USE HISTORY:** All Internet search, browsing history, and application usage history, such as Web & App Activity**,** including: search terms; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; all text typed into the Google Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP addresses clicked on; user settings; and all associated logs and change history;

- **LOCATION HISTORY:** All records indicating the location at which the account was active, such as Location History and Web & App Activity, including: GPS data; cell site/cell tower information; IP addresses; information associated with each location record, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, and inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car); and associated logs and user settings, including Timeline access logs and change history;

**Gmail**

- **GMAIL:** The contents of all emails associated with the account, including, but not limited to: stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

- **CONTACTS:** Any records pertaining to the user's contacts, including: address books; contact lists, including autocomplete suggestions; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

- **CALENDAR:** Any records pertaining to the user's calendar, including: Google Calendar entries; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

- **WEB-BASED CHATS:** The contents of all chats associated with the account, including Google Hangouts, Meet, and Chat, in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size and length of each communication; user settings; and all associated logs, including access logs and change history;

**Google Drive**

- The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

**Google Photos**

- The contents of all media associated with the account in Google Photos or Picasa, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

**Google Maps and Trips**

- All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

**Google Play Store**

- **MEDIA AND APPLICATIONS:** All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

**Google Voice**

- **GOOGLE VOICE:** All Google Voice records associated with the account, including: associated telephone numbers, including forwarding numbers; connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history;

- **GOOGLE VOICE SUBSCRIBER RECORDS:** All business and subscriber records associated with the account on Google Voice, including: name; user name; physical address; alternate or recovery emails; telephone numbers, including SMS recovery numbers; linked accounts; account status; account creation date; account registration IP address; length of service; associated devices; associated AndroidIDs; means and source of payment (including any credit or bank account number); and all associated logs and change history;

**Messaging Services**

- **MOBILE MESSAGING:** The contents of all messages associated with the account, including Google Duo, Android Messages, and Google Allo, in any format (e.g. SMS,

MMS, or RCS) including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses and telephone numbers; the size and length of each communication; associated telephone numbers, including SMS recovery numbers; usernames and other identifiers; user settings; and all associated logs and change history;

**YouTube**
- **YOUTUBE CONTENTS:** The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

- languages of input and output; and all associated logs, including access logs, IP addresses, timestamps, location data, and change history;

The Provider is hereby ordered to disclose the above information to the Government within 21 days of the issuance of this warrant.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of Title 18 United States Code Section 922(a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun to Juvenile] and Section 1961(1)b) [Straw Purchasing and Firearms Trafficking] those violations involving Melvin R ALVARADO ORTIZ and occurring after January 1, 2021, including, for each account listed on attachment A [the **Target Accounts**], information pertaining to the following matters:

a)  Evidence of the crimes under investigation, including preparatory steps taken in furtherance of such activity, and steps taken after such activity to hinder and prevent apprehension and identification, or evidence that may refute the subscriber's involvement in such activity;

b)  Information that constitutes evidence concerning the unlawful dealing in firearms without a federal firearms license or making false statements in the acquisition of firearms from a federally licensed dealer;

c)  Evidence indicating how and when the **Target Accounts were** accessed or used, to determine the geographic and chronological context of the **Target Accounts** access, use, and events relating to the crime under investigation and to the email account owner;

d)  Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

e) Evidence indicating the **Target Accounts** owner's state of mind as it relates to the crime under investigation;

f) Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts;

g) The identity of the person who created or used the **Target Accounts**, including records that help reveal the whereabouts of such person; and

h) The identity of the person(s) who communicated with the **Target Accounts** about matters relating to the dealing in firearms without a federal firearms license or making false statements in the acquisition of firearms from a federally licensed dealer, including reports that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.